Alright, we'll proceed to hear argument in the next case on calendar, which is United States v. Barry Ray Knight, and we'll hear first from Ms. Henderson. Thank you, Your Honor. Good morning. May it please the Court, my name is Elyse Henderson, and I'm here on behalf of Appellant Barry Knight. I'd like to reserve four minutes for rebuttal, and I'll keep an eye on the clock. I welcome questions on other issues in the briefing, including the issues that Your Honors have been discussing with my colleague, but I would like to focus today on vindictive prosecution and denial of the motion for a continuance. Starting with vindictive prosecution, this is the rare case with direct evidence of vindictiveness. The government, in its September 19th letter, said, if a pretrial motion is filed in this case, we will return to the grand jury and seek a superseding indictment, and then the government followed through on that. Well, it's not so much that if you file a motion, it's that if this doesn't plead out right away, we're going to add more charges because the case is undercharged. If we're going to go to trial. That's how the government asks this Court to read the September 19th letter, but that reading isn't supported by the objective evidence in the record for a couple of reasons. First, the September 19th letter, unlike some earlier informal communications, did not say anything about plea negotiations, but also the letter said, let us, the government, know if your client wants to plead guilty without a plea agreement. So the government can quibble about when exactly plea negotiations ended, whether they ended in September 2021 or June 2022, or even earlier in September 2022, but by the time the government sent that letter on September 19th, there were no longer plea negotiations on the table. Is it ever the case that negotiations stall and then pick up later, particularly as the trial date gets closer? That could happen. Not just could happen, it doesn't seem to me to be an unlikely possibility. Not in this case, Your Honor, and we know that because Mr. Knight tried, and this came out in the transcript of Calendar Call, where a defense counsel said, we approached the about getting an extra benefit, but just a guilty plea that preserved our right to appeal the issue with the continuance and the issue with the motion to compel, and the government said no. So the motion to compel was the pivotal issue in this case that led to the additional charge. It wasn't a standard motion that the government sees in every case. It was a motion that the government has been fighting in this case, in this district, and across the country. The government did not want to turn over information about torrential downpour for whatever reason and threatened an additional charge for filing a motion to compel. Because there were no plea negotiations going on at that time, the additional charge is because Mr. Knight exercised his right to file a pretrial motion, and under this court's precedent and Supreme Court precedent, that's vindictive and it violated Mr. Knight's due process rights. I'm going to reconcile this with Gomez-Orduno. The Ninth Circuit states in the context of pretrial negotiations, that addictiveness will not be presumed simply from the fact that a more severe charge followed on or even resulted from the defendant's exercise of a right. How do we square those two? Yes, Your Honor, the government relies heavily on that case and that language from other cases, but we're not asking this court to presume vindictiveness simply from the timeline here, that he filed the pretrial motion and then the new charge was sought. This court has said that the timeline alone is not enough for the presumption direct evidence is analyzed differently. But for the presumption, the timeline is not enough, but it can be strong evidence. This court has even said it can be overwhelming evidence raising a presumption. And here we have the timeline. We also have the express threat in the September 19th letter. And there's other objective facts in the record that raise the presumption of vindictiveness here, separate from the direct evidence. So the two charges were based on the same investigation, the same underlying facts, the same prosecutor, and the same investigating agency. So this isn't a case where just by a coincidence, the defendant filed a pretrial motion and then a new charge was added later. This is a case where all of the facts support a finding of vindictiveness here, including the government's own language in its September 19th letter. But if the government could have charged initially with additional crimes, I mean, where's the vindictiveness of that? They chose not to, and then later just picked up where it could have done in the first instance. What this court has said is that the vindictive prosecution doctrine is a limit on the government's discretion. So, of course, the government can make their charging decisions in the beginning with the hope that plea negotiations will be fruitful. The government can add charges later when those plea negotiations fall through. But what the government can't do is condition a new charge on the filing of a pretrial motion, not on plea negotiations falling through. But you're taking that, I think, out of context in the September 19th letter because it says, you know, the government intends to represent this matter to the grand jury for superseding indictment and begin trial preparations on October 4th. On that date, we'll begin issuing trial subpoenas, drafting jury instructions, preparing exhibits, interviewing witnesses. Therefore, if your client wishes to plead guilty without a plea agreement, please notify me before then in order to preserve your client's ability to benefit from the 3E1.1b offense level reduction for acceptance of responsibility. That basically saying if we're going to go through all this work of doing the, you know, the prep for trial, you're going to lose the acceptance of responsibility. You can still get that. You won't have a formal plea agreement. But it's essentially a formal plea agreement. If at this point, you're still going to be able to get the reduction for acceptance of responsibility, you'll avoid the higher charge. Because I'm telling you now, if you make me take this case to trial and do all this work, I'm going to do it right. And I'm going to add the extra charge. Why isn't that a sort of de facto plea offer? Because what this court looks to and what the Supreme Court looks to is actual plea negotiations with a give and take between the two sides, not unilateral action on the part of the government. So in any case, a defendant can plead guilty without a plea agreement. A defendant choosing not to do that doesn't justify new charges under this exception to the doctrine for pretrial negotiations. And there are cases where it's a hard question whether there are actual plea negotiations going on. Kent, I believe, is an example of that, where the defendant argued there were not explicit plea negotiations. And this court said, you don't need explicit plea negotiations. But here, this court doesn't need to draw the line between potential negotiations and actual negotiations, because there were not even potential negotiations on September 19th. This is an offer. It's an offer. The charge won't get added. You'll get the two-point reduction. And if he pleads guilty now, it's not with a formal plea, but that's an offer. That language can't be read separately from the earlier sentence about filing or seeking the superseding indictment as Mr. Knight filed a pretrial motion. Well, because it means you're going to make me do the work on this case. You're going to make me file an opposition, and then I got to do all the rest of getting this case for trial. And if you avoid all that work, you'll get a deal. You won't get this extra charge. You'll get the two points. That's a plea offer. I agree with Your Honor that the government, that this letter can be read as the government saying, we want to avoid this extra work. But that's not the test for vindictive prosecution. The test asks whether there is a give and take of actual negotiation, and telling a defendant that he can plead guilty without a plea agreement, to get acceptance of responsibility, but only if he does not file a pretrial motion, that's not a give and take negotiation. A defendant can plead guilty without a plea agreement on his own, without being at the bargaining table with the government. He got the bargain of not getting the extra charge, too. But if that was the test, then the government in any case could say, if you file a pretrial motion, because we have to respond to that, and because we have to start preparing for that point, then we're going to add a new charge. And that's not the test, because that would chill defendants from exercising their right to file these types of pretrial motions. And that's what the Supreme Court in Blackledge was trying to prevent, chilling defendants from exercising their pretrial rights. So why isn't this like board and courtship then? Because there is no ongoing plea negotiation with a give and take. Because there aren't two sides at the bargaining table. Now, what the bargaining looks like in a particular case is going to vary depending on the facts. But what the Supreme Court has said is we make this exception for plea bargaining, because it benefits both sides. The government gets to avoid the work of a trial. The defendant gets some benefit here. But the defendant isn't getting a benefit if the government is saying work will only not return to the grand jury if you don't file a pretrial motion. That's not what the Supreme Court and this court are talking about with the give and take of negotiation. When you say there's no ongoing plea negotiations, how do you reconcile that with the fact that before this September 19th, the government's reminding Knight's counsel of motion deadlines on the 15th and wanting to check if Knight was interested in a plea. Isn't that an indication that there's ongoing discussions? That could definitely be read as an indication that the government was open to discussions on September 15th. I don't know what happened between September 15th and September 19th. But in the letter, which unlike the earlier communications, was a formal letter typed out on Department of Justice letterhead, the government says, let us know if you want to plead guilty without a plea agreement. And defense counsel and Mr. Knight had to take the government at its word in that letter that there is no potential for plea negotiation, and if we file a motion to compel, it will lead to a superseding indictment. So they had to plan the defense strategy based on what the government said in its letter. They made the decision to file the motion to compel. Other defendants would have been shielded from filing that motion to compel. And this is the problem that the Supreme Court tried to avoid in the vindictiveness cases. And very briefly, for the motion to continue, the district court abused its discretion by denying the motion to continue, which came at a pivotal moment in this case. It was the first motion to continue after the last stipulation was rejected, the 90 days requested had been replaced by 60 days. A lot happened in those 60 days, including the government getting a superseding indictment, adding an additional five years to the mandatory minimum, and an additional element that required conversations with experts, because the additional element is receipt, which the government proved at trial through their expert to talk about BITORN, a complicated, sophisticated computer program. So there was a lot going on, including the motion to compel, including the draft motion to suppress. And the... But that was all based on a reasonable expectation of privacy argument, which you were going to lose anyway. The motion wasn't complete. So to judge the merit of that motion like the district court did on the state that it was in when it was filed as an exhibit was not reasonable under these circumstances. But even setting aside the motion to suppress, there was more in the motion to continue than just the motion to suppress. And there was more in the motion to compel than just evidence needed for the motion to suppress. So if there are no further questions, I'll reserve the remainder of my time for rebuttal. All right. Thank you, counsel. We will hear now from Mr. Walkinshaw. Good morning. May it please the court. Peter Walkinshaw on behalf of the United States. I'd like to just briefly, and I think this can be done quickly, address the arguments regarding vindictive prosecution. I think the arguments regarding whether or not there were explicit plea negotiations in a back and forth in which defense counsel responded, whether or not that's really relevant is exposed entirely by this court's precedent in the United States versus Kent, in which this court said, we reject Kent's argument that we should apply a more lenient rule when enhanced charges do not arise from the context of explicit plea negotiations. Later on, the court says, Kent offers no authority for the untenable proposition that a defense attorney who does not respond to a written plea offer has unilaterally opted out of negotiations. It's very clear, and it makes sense under the Kent precedent, that defense counsel can't simply prevent the government from trying to negotiate for a plea. The Supreme Court has recognized in Goodwin and Borden Karcher that it is a constitutionally legitimate aim for the government to attempt to security conviction through a guilty plea. You can say this is an inartfully drafted letter would be a polite way to put it. The September 19th letter. Your Honor, certainly in the heat of trial preparations, and it certainly could have been made, but I think the key distinction to be made is that what the government is seeking in this letter is a guilty plea, which is the fundamental object of all government plea negotiations. It does say without an agreement. That's true. It's much more, but we would make it clear that what the government is looking for is a guilty plea, and that letter preserved the opportunity for the defendant to have the government continue forbearing on this charge. It was clearly an attempt to get the defendant to the negotiating table, and the fact that it failed shouldn't be held against the government, given that it had foreborne this charge for over a year and a half at that point, and it said from the outset of the case that it was considering bringing this charge, which is entirely appropriate given the underlying factual circumstances here. Where is that specifically in the record, that it was considering the charge? That it was communicated to the defendant early in the case that it was considering adding the charge? Yes. I believe that the back and forth on this is largely contained in exhibits and uncontested representations in the litigation over the motion to dismiss for vindictive prosecution below. So that timeline, really in terms of the exchanges between Knight's sort of succeeding counsels and the government, wasn't disputed, and several emails were entered as exhibits to the motions. Unless the court has other questions, I'm happy to move on to the motion to continue aspect of the case. And I think, again, this is a case where the motion to continue was not an abusive discretion for the district court to deny, given that it already warned defense counsel two months prior to the filing of the motion that the court was concerned with the progress of the case, that no motions had been filed, that all of the information necessary to file the motions at issue had been known to the defendant. Specifically, the motion to compel had been known to the defense from the outset of the case, and the court was well within its rights to take a look at the draft motion, particularly the fact that it highlighted aspects that it said that the defense said would fill in. It essentially suggested that by filling in numbers that were large enough in highlighted areas regarding the number of searches that the government technology could run, would somehow turn the motion to suppress into, which is by virtue of having a lot of computing power, potentially, that a valid theory of suppression could arise. The district court disposed of this very clearly and correctly by noting that torrent is not the sort of essential technology to participate in modern society that a cell phone is. In Carpenter, the Supreme Court made clear that cell phones are almost a feature of human anatomy, that's the phrase that they used, that cannot be said of BitTorrent, which is a file sharing application akin to Napster of the late 20th century. The two things simply are not comparable in that the use of BitTorrent is plainly a choice that the vast majority of Americans do not make and live perfectly comfortable lives without having done so. So to compare it to cell site tracking, where it tracks the physical location of the user throughout all day, every day, simply an inapposite comparison. And in order for the motion to compel to have any other merit, the defense would have to identify some sort of other interest that would rise to Rule 16 materiality. They didn't do so, although they haven't done so here, what information could possibly have, it just remains a mystery. And so the district court did not abuse its discretion in refusing to have its valuable time eaten up by further motion practice and further delay. I'm happy to take questions on other issues, but I believe that largely disposed of. You will. I'm happy to, Your Honor. Please. You heard a conversation with counsel in the Ely case. You took the opposite position in your brief, but then last week you submitted a 28-J letter that took it all back. Do you stand by the 28-J letter and wish to withdraw that position? Your Honor, I'm mindful of my obligation as a representative of the government to maintain a consistent position before this court. It did not happen. That message needs to be taken back to your office. That's why there are supervisors to sort of prevent, because our clerk's office is very good about catching similar cases and put them in front of the same panel, and it's head-snapping to have two briefs from the same office say the opposite thing. I certainly understand, Your Honor, and I will say I regret and apologize for the error in this case. Obviously, it would have been my preference for it to come out the other way. And I will say that the government will not object to affirming the condition in both of these cases by any means. Well, I'm concerned about the long-run implications, because it struck me, and we'll talk about your case, because it's one you're more familiar with. I mean, you made the observation in a brief discussion, which struck me right on. I actually noticed it myself first, which is, Cope is talking about descriptions, and the condition here is entirely about visual depiction. That seems to be worlds apart. And the other thing that puzzles me, and this may even reach back to Cope, and I know we're bound by it, but we're talking here about conditions of supervised release. So, our defendant here has been sentenced to like 16 years, even with good time. He's not getting out any time soon. How in heaven's name is there a collateral attack we should be concerned about, hypothetically, after he's served time and he's then out? I mean, I'm just utterly mystified that these, I understand the mechanics. You don't have to craft them case by case. But what in heaven's name are we talking about here? Your Honor, candidly, I would agree with the Court's suspicion that images of adult or child pornography that are necessary to and used for a collateral attack, which is the proposed language of the case. I agree. I think it's likely a null set. I think it's very unlikely for that condition to ever arise. And I agree with my client. That is not overbroad. I agree, Your Honor. And I don't know that I can say much more than I personally agree, Your Honor. Well, and I assume worked around the community, but granted the language for special conditions is used customary language. But you take a step back and look at the case as we're called upon to look at it. The head snapping is an appropriate description for what we're dealing with here. I agree, Your Honor. Anyway, I guess the message has been communicated. I think we're out of the aisle. And again, Your Honor, I can only apologize to the Court for the inconsistency in the government's position here. We'll certainly bring this message back to our office. If the Court has no further questions, I will submit. All right. Thank you. Thank you very much. I will hear a rebuttal then from Ms. Henderson. Thank you. And I'll be very brief. Just for Kent, Kent was about the difference between explicit plea negotiations and implicit plea negotiations where maybe there isn't a lot of communication going on. This is not Kent. This case is about plea negotiations ending at some point before the September 19th letter. Your Honor has also mentioned or used the phrase inartfully drafted. This Court has said that the inexperience or the mistake of a prosecutor's office is not an excuse in the vindictiveness context because this Court can only look to the objective evidence in the record. And the objective evidence in the record is that September 19th letter along with other communications between the parties. And then the government said that the point of that letter was getting to the negotiating table, but the government cannot get to the negotiating table by threatening to retaliate against filing a pretrial motion. The government can engage in negotiations, but it cannot use that tactic because that defendants from filing pretrial motions, and that is vindictiveness. And then finally, there's been a lot of discussion about what the government's motives actually were here. But the District Court correctly found, even setting aside the direct evidence, under the presumption test, Mr. Knight presented enough to raise a presumption of vindictiveness. The burden shifts to the government, and it's a heavy burden. This Court has said that in multiple cases. It's a heavy burden, and the government has not met that here because there is nothing in the record, no objective evidence showing that the government filed that superseding indictment based on pretrial negotiations, which had already ended, as opposed to the filing of the motion to compel. Okay. All right. Thank you, Counsel. I thank Counsel for both sides of this case, and the case just argued will be submitted.
judges: CLIFTON, COLLINS, Rodriguez